**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FRANK GILBERT, on behalf of himself and all others similarly situated, | |
| Plaintiffs, | No. 19-CV-04988 |
| v. | Judge Franklin U. Valderrama |
| I.C. SYSTEM, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frank Gilbert (Gilbert), a Sprint customer, allegedly incurred a debt for goods and services related to his Sprint account. As a result, defendant I.C. System, Inc. (ICS), a collection agency, mailed Gilbert a collection letter to begin collecting Gilbert's alleged debt. Gilbert filed this individual and putative class action lawsuit against ICS, alleging that ICS violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, by using unfair means to collect alleged debts. R. 1, Compl.[1]

ICS' Motion to Compel Arbitration (R. 10, Mot. Compel) and Gilbert's Motion to Strike the Declaration of Chris Hansen (Hansen Declaration), which was attached to ICS' Reply in Support of its Motion to Compel (R. 17, Mot. Strike), are both before the Court. For the reasons set forth below, the Court denies both motions.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

Gilbert allegedly incurred a debt for goods and services for a Sprint consumer account. Compl. ¶ 11. ICS is a collection agency that uses the mail and telephone to collect consumer debts originally owed to others. *Id.* ¶ 8; R. 7, Answer ¶ 2. It holds a collection agency license from the State of Illinois. Compl. ¶ 9; Answer ¶ 2.

Gilbert claims that on or about February 11, 2019, ICS mailed a collection letter to him regarding his alleged debt (Collection Letter). Compl. ¶ 14. According to Gilbert, the alleged debt is a "debt" as that term is defined in Section 1692a(5) of the FDCPA, and the Collection Letter is a "communication" as that term is defined in Section 1692a(2) of the FDCPA. *Id.* ¶¶ 11, 15. The Collection Letter stated that "Sprint is both the original and current creditor to whom this debt is owed," and that "[y]our delinquent account has been turned over to this collection agency." R. 1-1, Collection Letter at 6. The Collection Letter also included an account number, an ICS reference number, and stated that the balance due was $1,437.23. *Id.*

Gilbert alleges that the amount ICS sought to collect was actually increasing on a monthly basis due to interest or other charges, but ICS's Collection Letter did not inform him that his debt amount would be increased. Compl. ¶¶ 18–20. Gilbert further claims that, after he was credited for equipment charges, (which reduced the alleged debt to $985.00 in March 2019), the debt balance increased to $999.00 in April 2019 and $1,013.00 in May 2019. *Id.* ¶ 21. As a result, Gilbert alleges that he could have paid the amount claimed in the Collection Letter at some future date and not have realized that the amount paid would not have satisfied his current balance. *Id.*

¶ 22. He contends that to comply with the FDCPA, ICS should have informed him that if he paid the amount due as stated in the Collection Letter, an adjustment may be necessary after ICS received his check, and in that case, ICS would inform Gilbert before depositing the check for collection. *Id.* ¶ 25. Gilbert claims that ICS violated the FDCPA when it failed to disclose (i) that the balance of an alleged debt was increasing and/or (ii) that the amount owed on the ultimate date of payment would be more than the amount identified as "balance due" in the Collection Letter. *Id.* ¶ 31.

Gilbert brought this action individually and as a class on behalf of all persons similarly situated in the state of Illinois from whom ICS attempted to collect a debt by mailing them a letter substantially similar to the Collection Letter which lists a balance due "but which fails to state that the amount due is increasing and/or which fails to communicate that the amount owed on the date that the individual may pay will be more than the amount stated as being the balance due in the [Collection] Letter." Compl. ¶ 35.

ICS answered the Complaint and asserted multiple affirmative defenses, including that Gilbert's claims were barred by a contractual arbitration and class action waiver agreement. Answer at 1. ICS subsequently filed the pending Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* Mot. Compel. Gilbert filed a Response (R. 15, Resp. Compel), and ICS filed a Reply (R. 16, Reply Compel), attaching the Hansen Declaration in support of its Motion to Compel

(R. 16-1, Hansen Dec.). Gilbert then filed a motion strike Hansen's Declaration, which is also fully briefed. Mot. Strike; R. 20, Resp. Strike; R. 22, Reply Strike.

## Standard of Review

The Federal Arbitration Act "reflects both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Under the FAA, arbitration agreements "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (quoting 9 U.S.C. § 2)). "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Id.* "[A]rbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. 9 U.S.C. § 4; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Once the party seeking to compel has done so, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary

4

judgment. *Id*. "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id*. Like summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws reasonable inferences in its favor. *Id*. If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Tinder*, 305 F.3d at 735.

## Analysis

The Court addresses Gilbert's Motion to Strike the Hansen Declaration first, followed by ICS' Motion to Compel Arbitration.

### I. Motion to Strike

ICS did not support its opening Motion to Compel with any affidavit from a Sprint employee. In its Reply, without leave of the Court, ICS attached an affidavit from Chris Hansen, an Outside Collection Agency Manager for Sprint. Hansen Dec.

Gilbert, in turn, moved to strike the Hansen Declaration and the argument in ICS' Reply that the Terms and Conditions expressly apply to ICS as an assignee. Mot. Strike. Gilbert argues that the Hansen Declaration should be stricken, because it contains new evidence regarding the validity and authenticity of the Terms and Conditions. Gilbert also argues that the portions of ICS' Reply that reference ICS' status as an assignee should be stricken, because the assignee argument was not developed in ICS' opening brief and was raised for the first time in ICS' Reply. *Id*.

5

ICS counters that the evidence in the Hansen Declaration is not new evidence but rather rebuttal evidence and that it raised ICS' status as an assignee in its opening Motion to Compel. *See* Resp. Strike.

It is well-established that a reply brief should not present new arguments or incorporate new evidence for arguments that were not properly supported in an opening brief. *See, e.g., Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) ("Due process, we have cautioned, requires that a plaintiff be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims."); *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond."); *Horvath v. Apria Healthcare, LLC*, 2019 WL 5725378, at *2 (N.D. Ill. Nov. 5, 2019) ("'A reply brief is for replying'—not for sandbagging." (quoting *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987))).

It can hardly be disputed that the Hansen Declaration is new evidence that was not contained in ICS' opening Motion to Compel. The Court accordingly grants this part of the Motion to Strike and will not consider the Hansen Declaration in resolving the Motion to Compel.

However, the Court disagrees with Gilbert that ICS' Reply raises new arguments. ICS, in its opening brief argued, albeit summarily, that it was an assignee of Sprint, and ICS reiterates that argument in its Reply. *See* Mot. Compel at 1 ("ICS

is entitled to enforce the Arbitration provision of the Terms and Conditions, as an agent, assignee, and/or third party of Sprint."). Accordingly, the Court denies this part of the Motion to Strike and does not strike any other part of ICS' Reply.

In sum, the Court grants in part and denies in part Gilbert's Motion to Strike [17]. The Court strikes the Hansen Declaration but does not strike any other portions of ICS' Reply. The Court now turns to the Motion to Compel.

## II. Motion to Compel

In its Motion to Compel, ICS argues that by activating his Sprint account, Gilbert agreed to Sprint's Terms and Conditions. Mot. Compel at 1–2. ICS further argues that there is a valid and enforceable contract between Gilbert and Sprint for arbitration; that ICS, as an assignee, agent, or third-party beneficiary of Sprint, can enforce the arbitration provision in Sprint's Terms and Conditions; and that Gilbert's claims regarding ICS' Collection Letter are subject to arbitration. *Id.* at 5–8. As a result, ICS asks the Court to compel arbitration and either dismiss this lawsuit or stay this lawsuit pending completion of arbitration. *Id.* at 9–10.

In response, Gilbert retorts that ICS has not demonstrated the existence of a valid arbitration agreement; Illinois law does not allow ICS, a non-signatory, to enforce an arbitration agreement; and his claims are outside the scope of the alleged arbitration provision. Resp. Compel.

Before addressing each of these arguments, the Court reviews the documents that form the basis of ICS' Motion.

7

### A. The Underlying Documents

In support of its Motion to Compel, ICS attached the Declaration of Michelle Dove, its General Counsel and Chief Compliance Officer (Dove Declaration). R. 10-1, Dove Declaration. The Dove Declaration includes the following additional facts:

- Gilbert's Sprint account was referred to ICS for collection on or around February 4, 2019, after which ICS sent Gilbert a letter informing him of the referral and communicated with him on the telephone. Dove Declaration ¶ 3.

- ICS has access to Sprint's account records, which show that Gilbert activated, used, and paid for Sprint's services. *Id.* ¶ 4.

- Based on the attached Terms and Conditions, Gilbert "accepted and agreed to be bound by Sprint's Terms and Conditions through use and payment of the account services." *Id.*

- The Terms and Conditions contain an arbitration provision and a choice of law provision. The choice of law provision states that "the Agreement is governed by the laws of the state encompassing the billing address of the Device." *Id.* ¶¶ 5, 8.

- Plaintiff's billing address was in the state of Illinois. *Id.* ¶ 9.

- Plaintiff was provided with the Terms and Conditions when he began his Sprint account. *Id.* ¶ 13.

- "ICS is a third party seeking to collect a debt that is based on, is related to, and arises out of Sprint's Services or Agreement." *Id.* ¶ 6.

Sprint's Terms and Conditions were attached to the Dove Declaration. Dove Declaration, Exh. A (Terms and Conditions). ICS does not indicate where the Terms and Conditions originated, but they appear to come from Sprint's website, which states that the Terms and Conditions are "[e]ffective Sept 30, 2017." Terms and Conditions at 10-1-5. The top of the printed webpage directs readers to "Click any of the blue **More** links to see the full text of the Sprint Wireless Terms and Conditions." *Id.* (emphasis in original). There are blue "More" links throughout the first three

pages of the printout and at the very top of the fourth page. *Id.* at 10-1-5–10-1-8. Beginning near the top of the fourth page, the printout states, "FULL TEXT OF THE SPRINT WIRELESS TERMS AND CONDITIONS." *Id.* at 10-1-8. Following the "FULL TEXT" language there are no blue "More" links. *Id.* at 10-1-8–10-1-17. The Terms and Conditions include the following relevant provisions:

> **Who are we talking about?** When we say "we," "us," "our," or "Sprint," we mean Sprint Solutions, Inc. When we say "you," "your," "customer," and "user," we mean a Sprint account holder or someone who uses our Devices or Services. "Device," means any phone, tablet, mobile broadband device, or any other product or accessory we provide, sell, or that is active on your account with us. "Service(s)" mean Sprint-branded offers, rate plans, options, wireless services, billing services, applications, programs, products, software, or Devices on your account with us, as well as any other product or service that we offer or provide to you that references these General Terms and Conditions of Service ("Ts&Cs").
>
> . . .
>
> **How do I accept the Service Agreement?** If you sign, email, e-sign, open the box, or tell us on the phone that you agree, you have agreed! You must be of legal age. And most importantly, when your service is activated, you have agreed! If you don't want to agree, don't do any of these things.
>
> . . .
>
> **How do I accept my agreement?** You must have the legal capacity to accept the Agreement[.] You accept the Agreement when you:
>
> - Agree in writing or by electronic signature or by telling us you accept by email, over the phone, online, or in person; or
> - Activate, use, or attempt to use, the Services; or
> - Pay for the Services; or
> - Open any package or start any program that says you are accepting the Agreement by doing so.
>
> If you don't want to accept the Agreement, don't do any of these things.
>
> . . .

9

DISPUTE RESOLUTION AND ARBITRATION

**How will we resolve disputes?** . . . If we cannot resolve the dispute, you and Sprint agree that we will resolve the dispute through individual binding arbitration or small claims court, instead of courts of general jurisdiction. Back to top

**Mandatory arbitration and waiver of class action**

Instead of suing in court, you and Sprint agree to arbitrate all Disputes (as defined below) on an individual, non-representative, basis. You agree that, by entering into this Agreement, you and Sprint are waiving the right to a trial by jury or to participate in a class action or representative action. This agreement to arbitrate is intended to be broadly interpreted.

. . .

"Disputes" include, but are not limited to, any claims or controversies against each other in any way related to or arising out of our Services or the Agreement, including wireless coverage, Devices, billing services and practices, policies, contract practices (including enforceability), and service, privacy, or advertising claims, even if the claim arises after Services have terminated. Disputes also include, but are not limited to, claims that: (a) you or an authorized or unauthorized user of the Services or Devices bring against our employees, agents, affiliates, or other representatives; (b) you bring against a third party, such as a retailer or equipment manufacturer, that are based on, relate to, or arise out of in any way our Services or the Agreement; or (c) that Sprint brings against you. Disputes also include, but are not limited to, (i) claims in any way related to or arising out of any aspect of the relationship between you and Sprint, whether based in contract, tort, statute, fraud, misrepresentation, advertising claims or any other legal theory; (ii) claims that arose before this Agreement or out of a prior Agreement with Sprint; (iii) claims that are subject to on-going litigation where you are not a party or class member; and/or (iv) claims that arise after the termination of this Agreement.

. . .

**How does arbitration work?**

. . .

Notwithstanding any JAMS Rule to the contrary or any other provision in arbitration rules chosen, by agreement, to govern the arbitration, we each agree that all issues regarding the Dispute are delegated to the

10

arbitrator to decide, except that only a court (and not the arbitrator) shall decide any disagreements regarding the scope and enforceability of this agreement to arbitrate.

. . .

The Federal Arbitration Act ("FAA") applies to this Agreement and arbitration provision. We each agree that the FAA's provisions—not state law—govern all questions of whether a Dispute is subject to arbitration.

. . .

**Anything else?** Subject to federal law or unless the Agreement specifically provides otherwise, this Agreement is governed solely by the laws of the state encompassing the billing address of the Device, without regard to the conflicts of law rules of that state. . . . This Agreement isn't for the benefit of any third party except our corporate parents, affiliates, subsidiaries, agents, and predecessors and successors in interest. You can't assign the Agreement or any of your rights or duties under it, unless we agree to the assignment. We can assign the Agreement without notice.

*Id.* (emphasis in original).

## B. Existence of an Arbitration Agreement

A court "must decide whether a contract exists before it decides whether to stay an action and order arbitration." *Janiga*, 615 F.3d at 742. As previously noted, the party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. 9 U.S.C. § 4; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Relying on Dove's statement that Gilbert accepted the Terms and Conditions "through use and payment of the account services," ICS argues that the Terms and Conditions constitute a valid contract between Gilbert and Sprint. Mot. Compel. at 6. Therefore, ICS posits that Gilbert is bound by the Terms and Conditions provisions,

11

including the arbitration provision. *Id.*² ICS further argues that because Gilbert was provided with the Terms and Conditions when he opened his Sprint account, this alone establishes the formation of a contract. *Id.* at 6–7.³

Gilbert responds that ICS has not established a valid contract. Resp. Compel. First, he argues that ICS has produced a document that appears to contain two agreements with two separate arbitration and dispute clauses that are materially different and contradictory. *Id.* at 1–2. Second, he contends that ICS has not properly authenticated the Terms and Conditions "clearly downloaded from an internet website." *Id.* at 2. Gilbert further contends that Dove was only able to establish when Gilbert activated his account and used Sprint's services after she reviewed *Sprint*'s records (which she cannot authenticate because they are not ICS' records). *Id.*

Whether a valid arbitration agreement exists is determined under principles of state law. *Janiga*, 615 F.3d at 742. The parties agree that Illinois law applies. Mot. Compel at 5; Resp. Compel at 3. "Under Illinois contract law, a binding agreement

---

²In a footnote, ICS quotes *Henderson v. U.S. Patent Comm'n*, 2015 WL 6791396, at *4 (N.D. Ill. Nov. 2, 2015) and insists that even if Gilbert were to argue that he did not know what he was signing, he would still be bound by the Terms and Conditions. *See* Mot. Compel at 6 n.2 ("Under Illinois law, 'a party to a contract is charged with knowledge of an assent to a assigned agreement.'"). Notably, ICS incorrectly quotes *Henderson* ("a party to a contract is charged with knowledge of an assent to a *signed* agreement."). 2015 WL 6791396, at *4 (emphasis added) (internal citations omitted). Nevertheless, *Henderson* does not help ICS, because ICS has not presented a signed agreement to the Court.

³ICS cites to several out of jurisdiction cases to support its contention that Gilbert is bound by Sprint's website's Terms and Conditions, none of which apply Illinois law. *See* Mot. Compel at 7 (citing *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451–52 (E.D.N.Y. 2013); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838–40 (S.D.N.Y. 2012); *Cayaman v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1200 (S.D. Cal. 2013); and *MBNA Am. Bank, N.A. v. Boykin*, 2009 WL 1026592 (Neb. Ct. App. Apr. 14, 2009)). The Court does not consider these cases.

requires a meeting of the minds or mutual assent as to all material terms." *Bauer v. Qwest Commc'ns Co., LLC*, 743 F.3d 221, 227 (7th Cir. 2014) (quoting *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999)). This is based on an objective theory of intent, as opposed to the parties' subjective understandings. *Id.*

"Generally, one of the acts forming the execution of a written contract is its signing. Nevertheless, a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it." *Id.* (quoting *Carlton at the Lake, Inc. v. Barber*, 928 N.E.2d 1266, 1270 (Ill. App. Ct. 2010)) (internal quotations omitted). In the context of internet agreements, the Seventh Circuit has instructed that assent "is a fact-intensive inquiry: we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.). Indeed, a person using the Internet may not realize that she is agreeing to a contract at all, whereas a reasonable person signing a physical contract will rarely be unaware of that fact." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034–35 (7th Cir. 2016).

ICS has not met its burden of establishing a valid agreement to arbitrate, because it has not shown that Gilbert assented to the Terms and Conditions. ICS has not provided a signed contract. Instead, it has provided a website printout—the Terms and Conditions provide a list of actions Gilbert could undertake to accept them besides signing, including opening a box, or activating, using, attempting to use, or paying for Sprint services. Terms and Conditions at 10-1-8–10-1-17. Dove states that

13

Gilbert "was provided with the Terms and Conditions when he began his Sprint account" and agreed to them "through use and payment of the account services." Dove Declaration ¶¶ 4, 13. However, the Dove Declaration is devoid of any facts regarding how or when Gilbert received the Terms and Conditions, which became "[e]ffective Sept 30, 2017," (Terms and Conditions at 10-1-5), that he was made aware of the Terms and Conditions at any point, that he ever saw the Terms and Conditions, or that he had the chance to review the Terms and Conditions. Further, it does not provide any other information about the actions, if any, Gilbert took with respect to the Terms and Conditions.

Without such information, the Court cannot make the necessary fact-intensive inquiry to determine whether Gilbert assented to the Terms and Conditions. *Cf. Sgouros*, 817 F.3d at 1034; *see also Johnson v. Uber Techs., Inc.*, 2017 WL 1155384, at *2 (N.D. Ill. Mar. 13, 2017) (denying motion to compel arbitration, explaining that "the information that is lacking" to compel arbitration "is completely within Uber's control;" therefore, "Uber, as the movant, was required to present to the Court facts such that a reasonable jury could return a verdict in its favor"); *Wilson v. Redbox Automated Retail, LLC*, 2020 WL 1445622, at *7 (N.D. Ill. Mar. 25, 2020) ("Redbox has failed to present evidence showing that Wilson ever was aware of the Terms of Use—let alone assented to them."). *Johnson* is instructive here. 2017 WL 1155384, at *1. In *Johnson*, the plaintiff, individually and on behalf of a class, sued Uber for sending unsolicited text messages in violation of a federal statute. *Id*. Uber moved to compel arbitration based on an alleged agreement to arbitrate. *Id*. at *2. It supported

14

its argument with a declaration from one of its employees. The employee outlined the process of registering for an Uber rider account via a smart phone and described, on a step-by-step basis, "what a person sees on his or her phone screen using Uber's current version of its application." *Id.* Yet, the court denied the motion to compel, because the employee failed to describe the process as it existed on the date the plaintiff downloaded the Uber rider application or whether the process described in the declaration would have been the same on that date. *Id.* The court was "left to guess whether, in 2013, [the] [p]laintiff was meaningfully informed of the arbitration agreement and whether Uber reasonably communicated to the [p]laintiff that, by clicking on the registration button, he assented to the arbitration agreement." *Id.*

In this case, as indicated above, Dove only states that Gilbert "was provided with the Terms and Conditions when he began his Sprint account" and agreed to them "through use and payment of the account services." Dove Declaration ¶¶ 4, 13. Dove does not even provide the level of detail that was present in *Johnson*, such as the process for Gilbert registering or activating a Sprint account, or in what format or how Gilbert would have seen the Terms and Conditions. *See* 2017 WL 1155384, at *2. The Court is left to guess whether Gilbert was meaningfully informed of the Terms and Conditions and whether Sprint reasonably communicated to Gilbert that any of his actions would equal an assent to the Terms and Conditions.

On the record before it, the Court cannot conclude that ICS has met its burden to show that the Terms and Conditions constitute a binding agreement between Gilbert and Sprint. While ICS argues that Gilbert has failed to provide evidence

15

showing that ICS did not submit a valid contract between Gilbert and Sprint (Reply Compel at 3), this contention improperly shifts the burden. *ICS* has the burden of proving the existence of a valid contract. Without evidence showing Gilbert's assent to the submitted Terms and Conditions, the Court cannot determine whether a valid contract exists.[4] As a result, the Court denies ICS' Motion to Compel.

## Conclusion

For the reasons set forth above, the Court denies in part and grants in part Gilbert's Motion to Strike [17]. The Court also denies ICS' Motion to Compel Arbitration [10].

Dated: January 28, 2021

_____
United States District Judge
Franklin U. Valderrama

---

[4]Because ICS has not established that the Terms and Conditions constitute a binding agreement between Gilbert and Sprint, the Court need not address Gilbert's arguments that the Dove Declaration cannot be used to authenticate the Terms and Conditions and that the Terms and Conditions cannot constitute a valid agreement because they contain contradictory provisions. Similarly, the Court need not address ICS' status as an assignee, agent, or third-party beneficiary of Sprint, or the parties' scope arguments.